**RECORD NO. 16-1065**

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

CRICKET STORE 17, LLC, d/b/a Taboo,

*Plaintiff-Appellant,*

v.

CITY OF COLUMBIA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT COLUMBIA

**OPENING BRIEF OF APPELLANT
CRICKET STORE 17, LLC**

Thomas R. Goldstein
BELK, COBB, INFINGER & GOLDSTEIN, P.A.
Post Office Box 71121
Charleston, SC 29415-1121
(843) 554-4291
tgoldstein@cobblaw.net

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO

2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

08/05/2015 SCC                    - 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____      Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                          (date)

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................... 5

STATEMENT OF THE CASE ............................................................. 5

STATEMENT OF FACTS ................................................................. 11

SUMMARY OF ARGUMENT .......................................................... 13

ARGUMENTS ............................................................................... 17

      A.    STANDARD OF REVIEW ............................................... 17

1.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE CITY OF COLUMBIA ............................................ 20

      A.    THE DISTRICT COURT FAILED TO VIEW THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO APPELLANT AND DEPRIVED APPELLANT OF ITS RIGHT TO TRIAL BY JURY .......................................................... 20

      B.    THE DISTRICT COURT REJECTED ALL OF APPELLANT'S EVIDENCE CONCERNING ALTERNATE SITES ............................................................... 36

      C.    THE DISTRICT COURT ERRED IN FINDING THE BERGTHOLD ORDIANCES ARE NARROWLY TAILORED ...... 39

      D.    THE DISTRICT COURT DID NOT FOLLOW THE REQUIREMENTS OF REASONABLENESS SET FORTH BY THE UNITED STATES SUPREME COURT IN *RENTON* AND *ALAMEDA* ......................................................... 40

i

2.  THE CITY OF COLUMBIA AMENDED ITS ORDINANCE ON MAY 19, 2015 [DKT71] IN AN ATTEMPT TO MAKE IT MORE REASONABLE AND THE DISTRICT COURT REFUSED TO SET ASIDE ITS JUDGMENT OR TO ALLOW THE PLAINTIFF TO INQUIRE ABOUT THE AMENDMENT .....................................................42

3.  THE DISTRICT COURT REFUSED TO ALLOW THE APPELLANT TO ENGAGE IN MEANINGFUL DISCOVERY AND IGNORED THE APPELLANT'S REQUESTS FOR SCHEDULING CONFERENCE TO ADDRESS THE INCOMPLETE DISCOVERY ........46

THE DISTRICT COURT ERRED IN REFUSING TO ALLOW THE APPELLANT TO AMEND ITS COMPLAINT ......................................................49

CONCLUSION ........................................................................................51

STATEMENT REGARDING ORAL ARGUMENT .............................................53

CERTIFICATE OF COMPLIANCE..........................................................54

CERTIFICATE OF SERVICE ..............................................................55

# TABLE OF AUTHORITIES

## CASES

Page

*11126 Baltimore Blvd. v. Prince George's County*,
 58 F.3d 988 (4th Cir. 1995) .....................................................................42, 44

*Abilene Retail #30, Inc. v. Board of Commissioners of Dickinson County, Kansas*,
 492 F.3d 1164 (10th Cir. 2007), c*ert. den.* 552 U.S. 1296, 128 S.Ct.
 1762, 170 L.Ed.2d 540 (2008)...............................................13, 18, 24, 25, 27

*Adickes v. S. H. Kress & Co.*,
 398 U.S. 144 (1970).........................................................................................38

*Anderson v. Liberty Lobby Inc.*,
 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ..........................18, 38

*Annex Books, Inc. v. City of Indianapolis*,
 No. 13-500 (7th Cir. 2014) .........................................................14, 25, 26, 33

*Basiardanes v. City of Galveston*,
 682 F.2d 1203 (5thCir. 1982) ..........................................................................28

*Chesapeake B & M, Inc. v. Harford County, Maryland*,
 58 F.3d 1005 (4th Cir. 1995) .....................................................................41, 42

*City of Erie v. Pap's A. M.*,
 529 U. S. 277 (2000).................................................................................14, 16, 24

*City of Lakewood v. Plain Dealer Publishing Co.*,
 486 U.S. 750, 109 S. Ct. 2138, 100 L. Ed. 2d 771 (1988) .............................42

*City of Los Angeles v. Alameda Books, Inc.*,
 535 U.S. 425, 122 S. Ct. 1728 (2002) ......................................................*passim*

*Dima Corp. v. High Forest Township*,
 02-cv-3800 (D. Minn., 2003)......................................................................16, 39

*Encore Videos, Inc. v. City of San Antonio*,
 330 F.3d 288 (5th Cir. 2003) ..........................................................................34

iii

*Essence, Inc. v. City of Federal Heights*,
 285 F.3d 1272 (10th Cir. 2002) ...................................................18

*Erotique Shop, Inc. v. City of Grand Prairie, Tex.*,
 3:06-CV-2066-G (N.D. Tex. Nov. 28, 2006) ................................16

*Erznoznik v. City of Jacksonville*,
 422 U.S. 205, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975) ................28

*Foman v. Davis*,
 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 292 (1962) .....................19

*Freedman v. Maryland*,
 380 U.S. 51, 85 S. Ct. 734, 13 L. Ed. 2d 649 (1965) .....................42

*FW/PBS v. City of Dallas*,
 493 U.S. 215, 1210 S. Ct. 605 (1990) ............................................42

*Gene Lovelace Enterprises LLC v. City of Knoxville*,
 E2013-01584-COA-R3-CV (Court of Appeals, 2014) ...........35, 48

*Harkins v. Greenville County*,
 304 S.C. 606, 533 S.E.2d 886 (2000) .................................29, 31, 52

*Harrods Ltd. v. Sixty Internet Domain Names*,
 302 F.3d 214 (4th Cir. 2002) ........................................................48

*Illinois State Employees Union v. Lewis*,
 473 F.2d 561, 565-66 (7th Cir. 1972) ............................................48

*J & B Entertainment v. City of Jackson*,
 152 F.3d 362 (5th Cir. 1998) ..................................................30, 31

*Jacobs v. N. C. Administrative Office of the Courts*,
 780 F.3d 562 (4th Cir. 2015) ...................................................17, 38

*Krueger v. City of Pensacola*,
 759 F.2d 851 (11th Cir. 1985) .......................................................28

iv

*Marbury v. Madison*,
    1 Cranch 137, 2 L.Ed. 60 (1803) ...............................................................16, 33

*McCray v. Maryland Department of Transportation*,
    741 F.3d 480 (4th Cir. 2014) ...................................................................48, 49

*Mercantile Peninsula Bank v. French (In re French)*,
    499 F.3d 345 (4th Cir. 2007) .........................................................................38

*Metro Pony v. City of Metropolis*,
    11-cv-144-JPG (S.D. Illinois 2012)......................................................34, 39, 46

*Nader v. Blair*,
    549 F.3d 953 (4th Cir. 2008) .........................................................................48

*New Albany DVD, LLC v. City of New Albany*,
    581  F.3d 556 (7th Cir. 2009) ........................................................................34

*Northshor Experience, Inc. v. Duluth*,
    422 F.Supp.2d 713 (D. Minn., 2006).......................................................16, 17

*Nourison Rug Corp. v. Parvizian*,
    535 F.3d 295 (4th Cir. 2008) .........................................................................51

*Odom v. S. C. Department of Corrections*,
    349 F.3d 765 (4th Cir. 2003) .........................................................................18

*Schad v. Borough of Mount Ephraim*,
    452 U.S. 61, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981) .................................28

*Taylor v. McDuffie*,
    155 F.3d 479 (4th Cir. 1998) .........................................................................18

*Tolan v. Cotton*,
    134 S. Ct. 186 (2014).....................................................................................38

*Turner Broad. System, Ind. v. F.C.C.*,
    512 U.S. 622, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994)]............................24

*United States v. O'Brien*,
    391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968) ..................................28

*University Books & Videos, Inc. v. Miami-Dade County*,
    132 F. Supp. 2d 1008 (S.D. Fla. 2001).....................................................17, 39

*Walnut Properties, Inc. v. City of Whittier*,
    861 F.2d 1102 (9th Cir. 1988) ............................................................33, 34, 38

*World Wide Video v. Tukwila*,
    117 Wn. 2d 382, 816 P.2d 18 (1991)...............................................................34

*Z.J. Gifts D-2, L.L.C. v. City of Aurora*,
    136 F.3d 683 (10th Cir. 1998) ........................................................................18

## STATUTES

28 U.S.C. § 1331(a) ............................................................................................2
28 U.S.C. § 1331(a) ............................................................................................2
28 U.S.C. § 1343................................................................................................2
28 U.S.C. § 1367................................................................................................3
S. C. Code § 6-29-800........................................................................................33

## RULES

Fed R. Civ. P. 15(a)..........................................................................................51
Fed R. Civ. P. 56...............................................................................................38
Fed R. Civ. P. 56(f)...........................................................................................48
Fed R. Civ. P. 60(b) ..........................................................................................25
Local R. 16.01 ...................................................................................................10

## OTHER AUTHORITIES

Britt Cramer, "Zoning Adult Businesses:  Evaluating the Secondary
    Effects Doctrine," Harvard Law School, Discussion Paper No. 48. ............26

6A Wright & Miller, Federal Practice and Procedure § 1522 .................................19

10A Charles Alan Wright & Arthur R. Miller et. al., Federal Practice &
    Procedure § 2728 (3d ed. 1998)........................................................................38

13A Wright & Miller, Federal Practice and Procedure § 3531.7 ...........................44

Joseph Story, Commentaries on the Constitution of the United States (1833) .......20

South Carolina Freedom of Information Act................................................47, 49, 50

## STATEMENT OF JURISDICTION

This case is an appeal from the district court's refusal to allow the appellant to amend its complaint to add a state cause of action, from the district court's grant of summary judgment to the City of Columbia, including the district court's refusal to resolve discovery disputes, and from the district court's refusal to set aside its Order when the City realized its ordinance was incorrect as enacted and amended it on May 19, 2015. (Orders J.A. 3108-3963, 4010-4059 and 4164-4174)

The appellant is a 1600 square foot retail business that dispenses a take-home only adult message. (See photos of exterior and interior (J.A. 139-141) Much of its inventory can be found in any drugstore, department store, or novelty shop such as Spencer's at the Columbiana Mall. (J.A. 142-144). Taboo is located at 4716 Devine Street in Columbia, South Carolina. It is the largest city in the state, with 134.9 square miles and a 2010 population of 129,292 in the city limits and 767,598 in the metro area.

In November 2011, the appellant applied to the City of Columbia for a sexually oriented business license. After the City verified that the appellant met all the licensing and zoning requirements to operate a sexually oriented business, the

City issued the appellant a business license on December 5, 2011 (J.A. 131-132, J.A. 132-137).[1]  The appellant became the City's only adult licensed store.

Fourteen days after granting the appellant a license, the City hired consultant, Scott Bergthold, who outlined his scope of services and payment terms in a Letter of Agreement dated December 19, 2011.  (J.A. 3911-3914).  Three days later, the City passed first reading of the pre-drafted ordinance at a special meeting on December 22, 2011.  (J.A. Volume X [separately filed cd])  This ordinance permitted appellant a two-year "amortization" period, after which appellant applied to the City to continue under a hardship.  When the City refused the appellant's hardship application in 2013, appellant brought this suit, claiming that the City's municipal ordinances violated his First, Fifth and Fourteenth Amendment rights. The district court has jurisdiction of these federal claims pursuant to 28 U.S.C. §§ 1331(a) and 1343.  The district court found the City's licensing ordinance is not an unconstitutional prior restraint, in part because the ordinance provides for prompt judicial review "by providing that, if the appellant appeals to a hearing officer and the hearing officer denies the license, the applicant may appeal the decision to a court of competent decision [*sic.*] and that if any court action is initiated to appeal. . . the City's enforcement of any license denial, suspension or revocation, the City is required to issue the applicant a provisional license that allows the applicant to

---

[1]  A reference of differences in the before and after effect of the old and new ordinances are at pages 25-26 (J.A. 1094-1095).

operate until the court issues a judgment on the matter." (J.A. 4053), § 11-610 "Hearing; License Denial; Suspension; Revocation; Appeal." The parties are currently scheduled for a first appearance on April 25, 2016, on seven criminal citations the City issued, carrying maximum penalties of $7,644.00 and/or seven months of incarceration. The City threatens more charges.

The district court also had supplemental jurisdiction over pendent state claims pursuant to 28 U.S.C. § 1367, which it refused to exercise. After the district court refused to consider appellant's state claims (J.A. 3101-3102), appellant asserted state claims in pending state actions. (Both the district court and this Court denied appellant's request for a preliminary injunction. The ordinance under review provides for an automatic stay, and the district court used the automatic stay provisions to deny appellant's prior restraint challenge. See district court's order at page 44, (J.A. 4053). The City informed this Court it does not arrest people for violations. See City's Doc. 14 at page 5 (J.A. 134): "The City, however is *not* threatening to arrest anyone over Taboo's zoning violation." Emphasis in original. The state claims are not before this Court, but only because the district court denied appellant leave to amend the complaint. This refusal also impacted appellant's efforts to complete discovery.

In 2015, the City discovered a "mistake" in its ordinance and notified the district court on June 2, 2015, that the City amended the ordinance. (J.A. 4099-

4100).  The appellant moved for an order of the court asking the court to vacate the judgment in light of the City's judicial admission and for leave of court to inquire into the amendment.    (J.A. 4103-4126)  The district court denied the appellant relief on the ground that the plaintiff lacked standing to challenge the amended ordinance and that the matter was moot.  (J.A. 4164-4174)

This appeal, therefore, is from four decisions by the district court:

- First, the district court's grant of summary judgment to the City (J.A. 4010-4059).

- Second, the district court's refusal to reconsider that decision and its refusal to vacate its Order in light of the City's late amendment when the City amended its ordinance to narrow its requirements (J.A. 4164-4174);

- Third, the district court's refusal to allow the appellant to raise pendent state claims (J.A. 3101-3102);

- Fourth, the district court's refusal to address unresolved discovery questions (J.A. 4010-4059).

The district court entered its final order on January 7, 2016.  (J.A. 4164-4174).  The appellant timely filed an amended appeal on January 19, 2016 (J.A. 4175)

4

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the district court err in granting summary judgment to the City?
   A.      The district court improperly construed the evidence in favor of the City and weighed the credibility of witnesses and refused to consider appellant's study.
   B.      The district court rejected all of appellant's evidence regarding the lack of existence of reasonable alternative sites.
   C.      The district court erred in finding the Bergthold ordinances are narrowly tailored and reasonably applied to appellant's operation.
   D.      The district court did not follow the requirements of reasonableness set forth by the United States Supreme Court in *Renton* and *Alameda Books*.
2.      Did the district court err in refusing to vacate its judgment or allow the appellant to inquire about the amendment after the City amended its ordinance in May, 2015, in response to the appellant's suit?
3.      Did the district court err in refusing to address appellant's request for help with discovery disputes?
4.      Did the district court err in refusing to allow appellant to amend its complaint to add state claims?

## STATEMENT OF THE CASE

Prior to the appellant opening Taboo in December 2011, 4716 Devine Street was an abandoned Taco Bell, which sat vacant for three years and served as a gathering place for vagrants and an illegal drug marketplace.  In 2011, appellant's principal, Jeff White, noticed the dilapidated building and contemplated opening a mobile telephone outlet when he realized that the location complied with the City of Columbia's sexually oriented business ordinance.  Jeff White testified about the history and his efforts to get the store open in his affidavits, (J.A. 56-65) and testimony before the City's Hardship Judge and testimony during preliminary hearing held January 10, 2014, (J.A. 166-228, 254-260):

5

Q. What was the condition of the building prior to your moving in?

A. I'm not exaggerating; it was the worst I have ever seen. It had holes in the outside walls and had homeless people living in there, and they illegally turned on the water and I had to pay water consumption charges because the city came out and locked the meter. And my brother and I had to clean up urine and fecal matter from inside the business and also repair the holes in the outside walls.

. . .

A. Well, it sat vacant for over three years and the owner of the property received notices and fines from the city for failure to maintain the property. It had signs, signs that was in noncompliance that I had to remove at my own expense before they would issue me a sign permit. I totally cleaned up the outside, painted all the lines, I built a nice fence around the dumpster, I painted the outside, the inside, new ceiling tiles, new carpet, new fixtures. I totally renovated that building inside and out.

Because he has familiarity with adult businesses, appellant realized the location met Columbia's spatial separation and adult use requirements. He therefore applied for a permit to operate a sexually oriented business, and the City, after attempting to thwart the application by acting through various department requirements, granted the permit on December 5, 2011. (J.A. 56-65). Even though Taboo is a retail only business that dispenses a mild adult message, consisting of gifts, oils, candles, books and devices, the City immediately targeted it for closure. (See statements of City Councilmembers Plaugh, Baddourah, Runyan and Mayor Benjamin quoted on pages 4, ECF 4-2 (J.A. 3905). It has a small back room that contains adult DVD's and magazines. (See photos of exterior and interior (J.A. 139-140).

6

In his affidavit for preliminary injunction, J.A. 56-65) Jeff White testified:

The City's reaction to my opening was almost immediate. 17 days after I opened, City Council had on their desks an amended ordinance, and Council passed it at first reading on December 22, 2011. This amended ordinance, 2011-105 is directed at me and my business and makes sure that no adult business can operate anywhere in the City of Columbia. The city's Councilmembers made statements to the press that the City would not allow me to operate and would make the necessary changes to put me out of business. On or near December 28, 2011, the City Administrator/Councilwoman Plaugh made statements to the press that she would do everything in her power to see that the store was shut down. Some of these remarks occur in the *Free Times* report dated December 28, 2011, attached hereto as Exhibit 3. The City Administrator/Councilwoman Plaugh is quoted in that story as follows:

Councilwoman Leona Plaugh, whose district now included the city's lone adult store, says she'd like the city to go further—possibly restricting sexually oriented business to only industrial areas, as some cities have done.

"I just don't think they belong on major thoroughfares," she told the *Free Times*.

Asked whether city leaders were reacting too quickly based on limited public feedback, Plaugh said no.
(J.A 56-65)[2]

---

[2] When appellant tried to depose members of City Council and/or Bergthold as the author, the City threatened sanctions. When the district court refused to assist appellant with resolving discovery issues (J.A. 3093-3100, 3883-3886 and 4010-4059 [ECF 55, 66 and 82]) and when the district court rejected appellant's request to amend the complaint to add state causes of action (J.A. 2744-2747 [ECF 51]) appellant commenced a state case under the *South Carolina Freedom of Information Act*. There, appellant discovered a December 20, 2011, e-mail from the Mayor promising to fight Taboo: "Thanks Chris. This will get very interesting over the next few days but I firmly believe that this is an opportunity for our council to take a profile in courage. I hope to not only push for a change in our 13 year old insufficient approach to zoning, but I also plan to oppose and fight the opening of THIS business. Please encourage your friends, neighbors, and fellow church members to actively join us in this fight. God bless, Steve Benjamin." (emphasis in original)

7

Following Taboo's opening, on December 19, 2011, the City hired Scott Bergthold. (Contract, J.A. 3911-3914) Three days later, Bergthold appeared before City Council at a 23 minute Special City Council meeting on December 22, 2011, and provided to Council a prepackaged adult business ordinance along with a compact disc containing "2,200 pages of legislative history." (The appellant refers to this ordinance throughout as the "Bergthold ordinance" after its author.) The video recording of the meeting demonstrates that the City Council public meeting took 23 minutes and 35 seconds and Council relied on nothing other than Bergthold's presentation. The recording of this meeting is in the Joint Appendix as a disc so this Court can view it in its entirety and draw its own conclusions.

On December 29th, the City held its second Special meeting and passed final reading of the ordinance with no discussion. (See disc in J.A. – Volume 9)

At the expiration of the two-year amortization period, appellant appeared before the City on November 21, 2013, (J.A. 491-646) to plead a hardship. Bergthold, who is not licensed to practice law in South Carolina, represented the City and cross-examined the unrepresented appellant.[3] The City denied the appellant's hardship application by Order dated November 29, 2013 (J.A. 97-102), and the appellant filed suit in the United States District Court on December 20,

---

[3] Scott Bergthold is not licensed to practice law in the State of South Carolina and, as of the date of the hardship hearing at which he appeared representing the City, he disclosed he had "applied" for admission *pro hac vice*. See page 9 of hardship hearing at J.A. 500.

2013, challenging the ordinances on constitutional grounds and asking the district court for a preliminary injunction. (J.A. 12-43)   The district court took up the preliminary injunction on January 10, 2014, and on February 10, 2014, the district court issued a written Order denying preliminary injunction. (J.A. 807-832) The appellant asked the district court to reconsider this decision on February 27, 2014. (J.A. 863-890) While the motion for reconsideration was pending, on March 24, 2014, the City of Columbia asked the district court to stay all discovery until after the City moved for summary judgment, at (J.A. 952-953)  The district court never took up the City's motion to stay discovery until it granted summary judgment to the City on March 31, 2015.  (J.A. 4010-4059)   After the City moved to stay discovery, the parties paused all discovery for months, anticipating a ruling from the district court.  After a few months passed with no ruling, the parties started discovery.  This delay—in combination with the district court's refusal to consider state claims—ultimately prejudiced the appellant.  The appellant wanted to know how the City designed the ordinance that it passed at its December 22nd Special Meeting, but when appellant sought to examine a member of the City Council or the ordinance author about this, the City responded by threatening appellant and its lawyer with sanctions.  The appellant brought this threat of sanctions to the district court's attention by letter filed September 3, 2014. (J.A. 3093-3094)  The district court treated the letter as a motion for scheduling conference.  (See Local Rule

9

16.01:  "If one or more parties believe a conference is justified by the particular

circumstances of the case, they shall so inform the assigned judge by letter as soon

as practicable.")

When the district court did not act on the appellant's request, the appellant

reminded the district court on December 1, 2014, (J.A. 3966-3976) that the

discovery impasse remained unresolved:

> The plaintiff moves for an Order of the Court extending the Scheduling
> Order and renews  the request for scheduling conference (J.A. 3093-3094).
> In the alternative, the plaintiff   moves for an Order of the Court allowing
> the plaintiff's recent filings to be filed out of time.  This motion is pertinent
> to the filing of the plaintiff's Motion to Compel on November 6, 2014, (J.A.
> 3881-3882), the plaintiff's Supplemental Brief filed November 7, 2014 (J.A.
> 3887-3910), and the plaintiff's Third Declaration of Bruce McLaughlin filed
> November 25, 2014, (J.A. 3945-3950). (J.A. 3881-3882) is appellant's
> motion to compel.)

The district court never acted on appellant's first, second or third request for

scheduling conference.

On March 31, 2015, the district court granted the City summary judgment on

all causes of action, and on April 23, 2015, the appellant asked the district court to

reconsider this decision.   (J.A. 4010-4059 and 4061-4082)   While the court

considered appellant's motion for reconsideration, the City discovered a "mistake"

in its ordinance, and on May 19, 2015, the City amended the ordinance to narrow

its requirements allowing the City to deny the license for any violation of any

provision of any of the City ordinances.  The City notified the district court of this

amendment by "letter notice" on June 2, 2015, (J.A. 4099-4100)  After the City notified the district court that it had amended the ordinance to address what it concedes was a defect, appellant asked the district court to vacate its Order for Summary Judgment because the City's "letter notice" conceded that its ordinance was not correct as of its enactment.  On January 7, 2016, the District Court entered its final Order on the merits, denying appellant's Motions for Reconsideration and to Vacate Judgment.  (J.A. 4164-4174)  The appellant then filed his amended notice of appeal on January 19, 2016.  (J.A. 4175)

## STATEMENT OF FACTS

The chronology of events in this case is uncontested.  As this brief demonstrates, the parties have never disagreed about a municipality's right to control alleged "negative secondary effects" because every court taking up this issue acknowledges a local government's right to address **real** negative secondary effects.  The parties here have a disagreement about the City's motivation in designing its ordinance to eliminate Taboo and the validity of the prepackaged information on which it alleges it relied.  It is unnecessary to burden this Court with lengthy discussions of the holdings of *Renton, Alameda*, and their progeny because the dispute in this appeal is that the district court used these cases to justify its decision to weigh the City's and the appellant's evidence.  The parties agree that *Renton*, *Alameda* and their progeny define the criteria for narrow tailoring, the

11

need for reasonable alternative avenues of expression, for protection from prior restraint, and a municipality's right to rely on remote studies.  The issues here include that the district court refused to give any weight to the appellant's evidence and substituted its view of the evidence for that of a jury.  The only evidence in this record to support the City's rationale is the prepackaged ordinance that Bergthold provided.  As was the issue in *Abilene* (and others), the City's entire rationale is based on the unquestioning reliance upon the prepackaged ordinance and the cases and studies Mr. Bergthold presented to them on December 22, 2011.  However, appellant cast doubt on the City's reliance.  As plaintiff's expert testified about these studies:

> **Nothing** in the Columbia record demonstrates that take-home only, sexually-oriented Adult Uses cause the same effects as the land uses considered in most of the documents in the Columbia record."  (J.A. 1186) emphasis in original)

Mr. McLaughlin evaluated each study relied on by the City and found them all stale and based on "summaries" and "summaries of summaries" of far-away places.  In other words, the City did exactly what the U. S. Supreme Court, the Fifth Circuit, the Seventh Circuit, the Tenth Circuit, the Eleventh Circuit, and the Supreme Court of South Carolina said municipalities cannot do.  (For a convenient table that summarizes McLaughlin's findings, see (J.A.1188-1189).  The record shows the City never asks a question about the validity, applicability, or timeliness

of any study or case that Bergthold presented. The City never questioned how the ordinance controlled negative effects by applying its requirements, such as restricting hours of operating, limiting types of inventory under one roof, or requiring individual employee licensing requiring annual, in-person application. The City allegedly digested 2,200 pages of information in 23 minutes and never questioned Bergthold as to whether the information was reliable. These facts are almost identical to the facts presented to the Tenth Circuit in *Abilene Retail #30, Inc. v. Board of Commissioners of Dickinson County, Kansas*, 492 F.3d 1164 (10th Cir., 2007), c*ert. den.* 552 U.S. 1296, 128 S.Ct. 1762, 170 L.Ed.2d 540 (2008).

## <u>SUMMARY OF ARGUMENTS</u>

The district court erred in granting summary judgment to the City, and the district court's order is controlled by two broad errors of law that permeate the Order.

The first is that the district court construed all of the evidence in the light most favorable to the City even though the appellant was resisting the City's motion for summary judgment. At every point of analysis, the district court weighed the evidence and made credibility determinations in favor of the City and against the appellant, depriving appellant of his fundamental right to have the believability and credibility of witnesses determined by a jury. As discussed below, the district court spent over half of the Order refuting the appellant's expert

witness in detail and found the appellant's expert unworthy of belief while simultaneously accepting as true everything the City's Director of Planning and Development Services said even though the City's witness had to revise her affidavit to respond to deficiencies identified by appellant.  In short, the district court stood the summary judgment standard on its head.

The second error of law is that the district court failed to adhere to the U. S. Supreme Court's requirement restraints on speech be "reasonable."  *Renton* stands for the proposition that restraints on protected speech must be "reasonable."  What is or is not reasonable is almost always a question of fact.  For example, see the Seventh Circuit's exercise in exploring reasonableness through the use of a Sunday sales hypothetical posed to Mr. Bergthold over the same ordinance in *Annex Books, Inc. v. City of Indianapolis*, No. 13-500 (7th Cir. 2014), discussed below. The Supreme Court put an exclamation point on this legal principle in its holding in *City of Los Angeles v. Alameda Books*, *Inc.*, 535 U.S. 425, 122 S.Ct. 1728 (2002):

> The municipality's evidence must fairly support its rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the *Renton* standard. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance. See, *e.g.*, *Erie v. Pap's A. M.*, 529 U. S. 277, 298 (2000)

The appellant produced (J.A. 1378) convincing evidence from multiple sources that appellant's expert, Bruce McLaughlin, a certified land planner, had digested, analyzed and summarized in his three affidavits. McLaughlin's detailed study of Columbia and his predicate analysis "cast doubt on [the City's] rationale" and demonstrates the unreliability of evidence the City accepted without pause in adopting the Bergthold ordinance. As McLaughlin testified:

> **Nothing** in the Columbia record demonstrates that take-home only sexually-oriented Adult Uses cause the same effects as the land uses considered in most of the documents in the Columbia record. These documents purport to show adverse secondary effects emanate from businesses with on-premises consumption of adult fare, either in the form of live dance or in viewing adult videos within the business; they do not make the same purported showing with respect to take-home only adult uses.
>  (J.A. 1186) (emphasis in original)

The district court devoted over 50% of its order "second guessing the fact bound empirical data of" McLaughlin, a certified planner. "As a general matter, courts should not be in the business of second guessing fact-bound empirical assessments of city planners. See *Renton, supra,* at 51-52. *City of Los Angeles v. Alameda Books, supra*. As discussed throughout, the district court parsed the appellant's evidence and evaluated **its** view of McLaughlin's expertise. The district court "cited several other courts that have given his opinions about legal matters limited or no consideration" (Order denying reconsideration, (J.A. 4169), which is an error of law because only a jury can weigh credibility and believability.

For every court that might have been unimpressed with McLaughlin's evidence, there are as many that find him persuasive and rely upon his evidence in making judicial decisions. See: *Dima Corp. v. High Forest Township*, 02-cv-3800 (D. Minn., 2003); *Erotique Shop, Inc. v. City of Grand Prairie, Tex.*, 3:06-CV-2066-G (N.D. Tex. Nov. 28, 2006); *Northshor Experience, Inc. v. Duluth*, 422 F.Supp.2d 713 (D. Minn., 2006). Those three district courts thought Mr. McLaughlin's testimony worthy of consideration. It is exclusively the function of the jury to determine if the evidence presented is worthy of belief. Moreover, if the district court is correct, then no one can impeach or contradict the City's evidence, an absurd result that does away with the need for courts and allows a totalitarian government. "The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion." *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803). A reasonable juror might disbelieve the testimony of Krista Hampton, believing she is biased because of her employment with the City. And, of course, the district court never explains—even if all of the City's evidence were true—how 0.0016% of the City's available acreage provides a reasonable alternative avenue of expression. Relying on Mr. McLaughlin's testimony in the United States District Court in Minnesota, Judge Davis wrote: "At this early stage in the litigation, based on the admissible evidence in the record, the Court concludes that,

16

under the statute, there are no available sites for location of an adult entertainment establishment, such as Northshor, within Duluth. Thus subdivision 4 of the Statute violates the First Amendment because it provides no reasonable alternative avenues for communication. See *Univ. Books & Videos, Inc. v. Miami-Dade County*, 132 F.Supp.2d 1008, 1014 (S.D. Fla. 2001) noting that courts generally find that the number of sites is inadequate if they occupy less than one percent of the city's acreage." *Nortshor,* page 721. It is undisputed that the City provides, at most, viewing all the evidence in the light most favorable to the City—the opposite of the proper summary judgment standard—0.0016% of its available acreage to support an adult business. The district court gave this fact no weight.

All of the district court's conclusions about McLaughlin's opinions go to the weight to be afforded them, but the weight to be given to an opinion is the exclusive job assigned to a jury. See *Jacobs v. N. C. Administrative Office of the Courts*, 780 F.3d 562 (4th Cir., 2015), quoted below on page 38. The district court's evaluation departs from the summary judgment standard and invades the jury's sole responsibility to evaluate creditability and believability.

## **<u>ARGUMENTS</u>**

## A.  STANDARD OF REVIEW

The standard of review on an appeal from summary judgment is well known. The Court of Appeals reviews *de novo* an award of summary judgment.  [citations

17

omitted]    In determining whether summary judgment is appropriate, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed2d 202 (1986)  "[I]in deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor." *Taylor*, 155 F.3d at 482. *Odom v. S. C. Dept. of Corrections*, 349 F.3d 765 (4th Cir. 2003)    "We review the district court's findings of constitutional fact, conclusions of law, and grant of summary judgment regarding [Taboo]'s First Amendment claims *de novo*, pursuant to the standard provided in Federal Rule of Civil Procedure 56(c). *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 685 (10th Cir. 1998).  Although we ordinarily review a district court's findings of fact for clear error, "[w]here First Amendment interests are implicated, this court is obligated to make an independent examination of the record in in its entirety to ensure the challenged regulation does not improperly limit expressive interests." *Id.*  We draw all "reasonable inferences from the record in the light most favorable to [Taboo]." *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1283 (10th Cir. 2002).  *Abilene Retail #30, Inc., v. Board of Commissioners of Dickinson County, Kansas*, 492 F.3d 1164.  As discussed throughout this brief, the Tenth Circuit's analysis in *Abilene* involved the

18

same "pre-packaged" ordinance and legislative history, the same author, and almost identical facts as this case.

The standard of review on the district court's failure to allow appellant to amend is for an abuse of discretion:

> Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 292 (1962)

The district court's refusal to grant appellant's three requests for a status conference—including a motion to compel—to address the discovery impasse prevented the appellant from having an opportunity to obtain a ruling on important discovery matters until after the district court granted summary judgment. The *Rules of Civil Procedure* provide the status conference as a fundamental part of pre-trial procedure to insure that parties receive a just result. See 6A Wright & Miller, *Federal Practice and Procedure* § 1522: "Thus, Rule 16 provides an important mechanism for carrying out one of the basic policies of the federal rules—the determination of disputes on their merits rather than on the basis of procedural niceties or tactical advantage." Since the district court denied the appellant an opportunity to be heard and thus allowed an unresolved gap in

discovery, the standard on review is *de novo* because the district court's refusal

formed a basis for granting summary judgment.

## ARGUMENTS

**1.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE CITY OF COLUMBIA.**

### A.    THE DISTRICT COURT FAILED TO VIEW THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO APPELLANT AND DEPRIVED APPELLANT OF ITS RIGHT TO TRIAL BY JURY.

"[I]t is a most important and valuable amendment; and places upon the high ground of constitutional right the inestimable privilege of a trial by jury in civil cases, a privilege scarcely inferior to that in criminal cases, which is conceded by all to be essential to political and civil liberty." Joseph Story, *Commentaries on the Constitution of the United States* (1833)

The district court's Order granting summary judgment is controlled by the

overarching error of law flowing from district court's refusal to apply the proper

summary judgement standard to the evidence.  In fact, the district court Order

refutes itself, holding that McLaughlin's opinion carries no weight because he "is

primarily offered by Taboo as an expert in the area of land use planning.  . . . The

issue of secondary effects evidence and its sufficiency under the relevant case law

is a legal question beyond his area of expertise." (Order p. 14 J.A. 4023).

Simultaneously the district court finds "the Court will not substitute its judgment

for that of the Columbia City Council" and relies on *Alameda.  Alameda* requires

district courts not to second guess fact-bound empirical assessments, which is what

20

Mr. McLaughlin provides: "As a general matter, courts should not be in the business of second-guessing fact-bound empirical assessments of city planners." The Order under review thus refutes itself. McLaughlin's extensive resume (J.A. 1378-1386) shows that he is a certified city planner, Master of Science (Planning) and member of American Institute of Certified Planners since 1979, and he provides the exact "fact-bound empirical assessments" the Supreme Court instructs courts not to "second guess." But that is exactly what the district court did. The district court never explains why planner Krista Hampton's "fact-bound empirical assessments" cannot be challenged, but planner Bruce McLaughlin's can be ignored. The district court concedes McLaughlin's comprehensive resume, but ignores the controlling precedent of *Alameda* and disregards appellants and McLaughlin's sworn testimony. The district court's analysis is the opposite of the proper summary judgment standard and controls every part of the analysis of the ordinances under review. The City says there are 46 available sites; the appellant says there are none. The City says it is relying on valid studies and cases in passing its ordinances; the appellant says they are not relevant to Taboo and offers its own study to refute them. The appellant, in short, challenges the City's reliance on "shoddy data" and casts doubt on the City's rationale and whether the City's evidence fairly supports its ordinance. "The municipality's evidence must fairly

21

support the municipality's rationale for its ordinance." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728 (2002)

The district court did not view the evidence in the light most favorable to the appellant, but rather engaged in motivated reasoning. The summary judgment standard is to minimize the risk of error by requiring judges to adopt the perspective of the party resisting the motion so that parties will not be deprived their constitutional right to trial by jury.

The City of Columbia reveals its motivation for designing its ordinance (like Dickinson County did in *Abilene*) through public comments by its governing body members, such as Councilman Runyan's statement that: "the only tragedy in my heart is that we cannot zone them out of the City," or Councilmember's Baddorouh's statement asking how long can Taboo stay in business, or Councilmember Newman's statement that the City's desire is "to keep certain businesses away from our communities and our children," or Councilmember Davis' statement that the City must remain vigilant about "monitoring" negative secondary effects. (These comments are summarized at J.A. 3905). Because these and other comments are wholly unsupported by the record, they are nothing more than canards and betray the City's true motivation.

Of course, a government official has just as much right as any citizen to be boorish and uniformed, but this Court cannot permit a local government to legislate

against protected speech by asserting a rationale that is based on nothing more than prejudice.

The Seventh Circuit Court of Appeals took up a similar question in 2014, in analyzing a Bergthold Ordinance. The Seventh Circuit wanted to test the City's rationale, so it posed the following hypothetical:

> To test the proposition that delay in obtaining reading matter does not cause loss, we put a hypothetical at oral argument. Suppose Indianapolis were to prohibit the distribution of newspapers on Sundays. (Just newspapers: our hypothetical law differs from a general Sunday-closing statute.) [citation omitted] Closure could achieve multiple benefits, including a reduction in the number of traffic accidents (newspapers generate lots of traffic because trucks deliver newsprint to plants and printed papers through the region; home delivery carriers may drive their own cars); a reduction in robberies of paper deliverers, who may be on the street when few others are awake to protect them; and a reduction in the newspaper's carbon footprint and other pollutants. All the news (and ads) now in the Sunday paper could appear in Monday's paper, so readers would retain access, and anyone who wants up-to-date news could get it on the Internet while avoiding accidents, robberies, and pollution. The lawyer representing Indianapolis [Scott Bergthold] was shocked at the idea, however; he claimed that the City could not do such a thing consistent with the first amendment.

*Annex Books, Inc. v. City of Indianapolis*, No. 13-500 (7th Cir. 2014)

This record shows a lack of relevant rationale because the City did not consider anything more than Bergthold's "prepackaged" ordinance (discussed in next paragraph) complete with prepackaged legislative history" provided in a 23 minute presentation on December 22, 2011. The appellant came forward with evidence casting doubt on the City's reliance and rationale, and the district court ignored appellant's evidence. This is an error of law.

23

In 2007, the Tenth Circuit Court of Appeals, like the Seventh Circuit, took up the same issues raised there and here, involving the same ordinance by the same author. In *Abilene Retail #30, Inc. v. Board of Commissioners of Dickinson County Kansas*, 492 F.3d 1164 (10th Cir. 2007), the plaintiff brought an action challenging Abilene's adoption of a Bergthold ordinance (technically, like here, an original ordinance and then an amended ordinance). The plaintiff in that case raised the same challenges here; to wit, that the City passed the ordinance to target the plaintiff, that the City relied on stale "studies" provided by the ordinance's author, and that the ordinance had no relevance to the plaintiff's take home only operation. The Tenth Circuit defined its task in reviewing the ordinance as:

> Our role is to "assure that, in forming its judgments [the legislature] has drawn reasonable inferences based on substantial evidence." *Id.* [citing *Turner Broad. Sys., Ind. v. F.C.C.*, 512 U.S. 622, 666, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)]
>
> Although it quoted the relevant burden shifting language from A*lameda Books*, the district court misapplied the test required. Rather, the district court summarily found that the Board's evidence was sufficient to meet its initial burden, and focused instead on whether the Linz affidavit and studies cast doubt on the Board's rationale. Similarly, the parties devote the lion's share of their intermediate scrutiny arguments to the evidentiary battle waged between Linz and McCleary. We conclude, however, that a dispute of a material fact exists as to whether the cases and studies cited by the Board are "reasonably believed to be relevant" to its interests, such that the Second Ordinance is "designed to serve" its goal of combatting the secondary effects of Dickinson County sexually oriented businesses.
>
> *Abilene* at page 1174
>
> However, when a municipality choses to rely solely on foreign evidence, "the experience elsewhere [must be] germane to the measure under consideration and actually relied upon." *City of Erie*, 529 U.S. at 313, 120 S.Ct. 182 (Souter, J., concurring).

*Abilene* at page 1174

To hold that legislators may reasonably rely on those studies to regulate a single adult bookstore, located on a highway pullout far from any business or residential area within the County, would be to abdicate our "independent judgment" entirely. Such a holding would require complete deference to a local government's reliance on prepackaged secondary effects studies from other jurisdictions to regulate any single sexually oriented business, of any type, located in any setting. Our review is deferential, **but the evidentiary basis for the Second Ordinance must establish some minimal connection to the secondary effects attendant to Dickinson County's existing sexually oriented business(es).** Based on the record before us, we conclude that a material dispute of fact exists as to whether the Board has established such a connection.

*Abilene* at pages 1174-75  (emphasis added)

The appellant here produced evidence demonstrating that the City's evidence of "negative secondary effects" has no application to Taboo's mild adult message. The public statements of Council give away the game. This becomes more evident when we turn to a discussion of the City's reliance on the same prepackaged material to amend its ordinance in 2015, where the district court denied appellant's Rule 60(b) motion, including an application to inquire about the new ordinance. Like *Abilene*, the ordinance under review is designed to ensure that Taboo—and any other proposed adult business—is precluded from operating while leaving other, larger businesses such as Target, Spencer's, CVS untouched. The ordinance has built-in discretionary standards that allow the City to choose who it enforces it against. Consider the prohibition against a business that "regularly" sells devices. § 11-692(g) (J.A. 24-41). The Zoning Administrator has unbridled discretion to decide who "regularly" sells devices, and thus Spencer's

25

and Target and CVS all escape prosecution. The City's willingness to capture Taboo as pariah is justified solely on what its out-of-state law consultant tells them.[4] When the U. S. Supreme Court breathed life to the "negative secondary effects" doctrine, it was talking about the effects flowing from a concentration of adult businesses, not the sale of lingerie, massage oils, and "devices." A woman's right to purchase a "device" is just as much in her constitutionally protected zone of privacy as is her right to purchase contraception. It is astonishing that the City Council of Columbia thinks that regulating such private conduct is within its legislative responsibilities. No one on the *Renton* court argued that "negative secondary effects" flow from candles, lingerie, or personal devices. For a detailed examination of the myth of "negative secondary effects," see Britt Cramer, "Zoning Adult Businesses: Evaluating the Secondary Effects Doctrine," *Harvard Law School, Discussion Paper No. 48*.

The order under review reverse engineers the summary judgment legal analysis and works backwards from conclusion to justify a result previously reached. For example, on page 10 of the Order under review (J.A. 4010-4059) the District Court writes: "Taboo also relies on the statements of several of the

---

[4] Yale University ran off one of its professors in the 1960's, Stanley Milgram, after he demonstrated how little effort it takes for an authority figure to convince people to deliver what they believed were painful and harmful jolts of electricity to a subject for no reason except that an authority figure in white coat orders it. The Seventh Circuit's Sunday sales hypothetical in *Annex Books* shows how easy it is to rationalize the control of speech.

members of City Council, but those statements are both **legally innocuous** and **irrelevant** to the analysis of the issues in the case." (emphasis added) The district court's statement is erroneous for three reasons: first, whether the statements are "legally innocuous" is a highly disputed question of fact. Even if the statements were "legally innocuous," they cannot be irrelevant because they are statements about motive and they "cast doubt on [the] municipality's rationale." *Alameda*. The statements of the Columbia City Council are especially relevant in this case because the City successfully blocked appellant from taking any meaningful deposition or inspecting the City's communications to show that the ordinance was not designed to address a substantial government interest but rather were tailored to capture a specific business (see *Renton, Abilene*). The district court denied appellant's motion to compel production of the City Council's e-mail correspondence regarding enactment of the ordinance. (motion at J.A. 3881-3886, and Order J.A. 4010-4059). The public statements of Council are statements about employing a method to restrict fundamental rights, under a pretext of eliminating nonexistent negative secondary effects. The district court writes at page 13 of its Order (J.A. 4022): "Furthermore, even though the City was not required to, it did, **in fact rely on evidence** about negative secondary effects arising from retail-only stores in enacting the ordinances. . ." (emphasis added) This statement is both an incorrect statement of law and unsupported by the record because the record shows

27

that the City hired Bergthold on December 19th, (J.A. 3911-3914) and he appeared at a December 22nd meeting that lasted 23 minutes. The City relied on only what Mr. Bergthold sold them in 23 minutes, and City Council never questioned any aspect of his evidence and never articulated concern about a single negative secondary effect. While courts may be generally reluctant to inquire into the motives of legislators, they have never hesitated to when fundamental rights are being infringed and when the evidence points to animus. The 11th Circuit took up this exact question in *Krueger v. City of Pensacola*, 759 F.2d 851 (11th Cir. 1985):

> Where such fundamental interests as the right to free speech are at issue, however, we require more than simply an articulation of some legitimate interest that the city could have had. See *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 217-18, 95 S.Ct. 2268, 2276-77, 45 L.Ed.2d 125 (1975). We will not be satisfied merely because the legislators have mimicked another ordinance that has been found constitutional in another context. *Basiardanes v. City of Galveston*, 682 F.2d 1203, 1213-14 (5thCir. 1982). The government must also show that the articulated concern had more than merely speculative factual grounds, and that it was actually a motivating factor in the passage of the legislation. See *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 69-73, 101 S.Ct. 2176, 2183-85, 68 L.Ed.2d 671 (1981); *Basiardanes*, 682 F.2d at 1215.
>
> • • •
>
> We agree that "inquiries into [legislative] motives or purposes are a hazardous matter." *United States v. O'Brien*, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968). Legislative decisions, commonly the product of compromise, are predicated on the consideration of numerous factors which may or may not all appear in the recorded legislative history. The courts are normally ill-equipped to evaluate the genuineness of legislators' stated purposes. The general judicial reluctance to plumb the legislative psyche does not mandate, however, that we must turn a deaf ear to a record that establishes with unmistakable clarity the actual motives of the legislators in this case. Tapes of the city council's public meetings, records of those meeting, and even admissions by the city's legal counsel at oral argument establish that the debate focused entirely on the morality of topless

28

dancing and the propriety of having such activity going on next to a church. At no time did a member of the public, or a commissioner, mention any problem with B-drinking or any other criminal activity mentioned in the ordinance. In the face of these facts, it is in our view beyond dispute that the ordinances' references to crime were not more than an attempt on the part of the city attorney to provide some means of shielding the ordinance against the bar owners' inevitable constitutional attack based on the city's actual motives.

The only expression of concern with negative secondary effects came from Mr. Bergthold in the December 22, 2011 meeting. In other words, the "motivating factor" in passing the ordinance was what Bergthold told Council their motivation needed to be. When the South Carolina Supreme Court addressed this issue in *Harkins v. Greenville County*, 304 S.C. 606, 533 S.E.2d 886 (2000), it said: "Each governmental body must look at its own situation and do the legal work necessary to insure that their laws comport with precedent from this Court as well as the U. S. Supreme Court." The U. S. Supreme Court said in *Alameda*:

In *Renton*, [we held] that a municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent government interest. This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipalities' evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*.

The district court failed to apply the burden shifting requirement of *Alameda* and granted summary judgment for the City. The City never met its requirement to rebut the appellant's evidence—even after the City amended its ordinance in May,

29

2015.  Then, it ignored the two contemporary studies of the City of Columbia it had.  (This is discussed in more detail below.)  This is the error of law that requires reversal.

Second, the United States Supreme Court made clear that in passing restrictions on free speech, local governments cannot rely on "shoddy data," and must evaluate their reality and not rely entirely on stale and remote studies (discussed more fully below).  For example, appellant's expert, McLaughlin, details the City of Columbia's use of "summaries" and "summaries of summaries" of studies to support the canard that a retail-only business like Taboo causes alleged "adverse secondary effects."  He finds the City's summaries less credible than studies for several reasons, including the use of "surveys" rather than "empirical data."  Also, summaries tend to overlook unrelated causes of adverse effect, and lack of first hand research leads to dependence on studies up to 33 years of age that do not deal with take-home only adult uses.  (J.A. 1326-1353)

In contrast to the City's reliance on Bergthold's stale and remote information, McLaughlin provided current and individual data in his study of the City of Columbia, particularly how it relates to a take-home only business like Taboo.  On page 23, of his declaration (J.A. 1196), McLaughlin writes: "It should be first noted that perambulatory statements and unsupported 'findings' alone are insufficient to justify an Adult Use Ordinance:  *J & B Entertainment v. City of*

*Jackson*, 152 F.3d 362 (5ᵗʰ Cir. 1998)." As McLaughlin says: "Many of the perambulatory clauses make claims as to the alleged adverse secondary effect of sexually oriented Adult Uses and these claims are entirely unsupported by any evidence whatsoever." (J.A. 1196) The case relied upon by McLaughlin holds:

> The mere incantation of the words, "secondary effects' may not save a statute "formulated without specific attention to specific secondary effect." Moreover, because the district court granted summary judgment before the record was fully developed, the City did not present evidence in court to demonstrate "a current governmental interest" that might validate the Ordinance. . ."
>
> *J & B Entertainment v. City of Jackson*, 152 F.3d 362 (5ᵗʰ Cir. 1998)[5]

The district court gave McLaughlin's evidence no weight, characterizing it as a legal opinion. It is not a legal opinion; it is a statement of fact. McLaughlin explains in detail why the three documents in the City's legislative history that address take-home only merchandise are flawed and fail to support the City's ordinance. First, McLaughlin analyzes Kelly's Fort Worth study and its contradicting opinions about negative secondary effects related to take-home businesses like Taboo. (J. A. pages 1232 – 1285)

Second, McLaughlin analyzes McCleary's, Kennedale study and finds his conclusions "the epitome of shoddy work," by overstating facts and further notes that the New York Supreme Court found McCleary not credible, noting he holds

---

[5] Compare the Fifth Circuit's statement with the statement by the South Carolina Supreme Court in *Harkins v. Greenville County* 340 S.C. 606, 533 S.E.2d 886 (2000).

no degrees "in criminology or urban planning or studies," and further finding, "because of the lack of any real world corroboration for those opinions, the Court rejects them."

Third, McLaughlin analyzes McCleary's "Rural Hot Spots" and finds McCleary bases his findings on "presumptions" as to the nature of Adult Use customers. "If his presumption is wrong, and it is, then so too is the balance of this concept and theory." As pointed out by the Seventh Circuit in *Abilene*, relying on the U. S. Supreme Court in *Renton* and *Alameda*, there has to be some connection between the subject of the study and the target of the ordinance.

This is a glimpse into the abundance of McLaughlin's relevant, fact-based empirical analysis applied to the City's "data" all of which the district court rejected even though McLaughlin not only did his own study, but also incorporated into it the City's 2013 Devine Street study. The district court held on page 15 of its Order that the City is not required to conduct its own study. This is a correct statement of law, and there has never been a disagreement about it. However—and the district court never appreciated this point—in commissioning the study of the Devine Street corridor, the City never expressed interest in any negative secondary effect stemming from anything. The City failed to express any concern for adverse effect at and around Taboo's location even as Taboo operated. The City's selection of "issues" for the Devine street study in 2013 is evidence of the City's

32

lack of concern for negative secondary effects, and it calls into question the motivation for the City's designing of the ordinance. The City's rationale was not to address a substantial government interest but rather to suppress Taboo's message. The district court erred in ignoring appellant's evidence about the City's rationale, and as *Marbury v. Madison* instructs, the province of the court is to protect the rights of individuals. If this were not the case, as history and *Annex Books* demonstrate, governments can rationalize anything.

The district court gave no weight to the controlling legal authority that places a heavier burden on municipalities that prevent all avenues of expression, and as appellant testified, the numerous burdens contained in the ordinance make it impossible for an adult business to locate anywhere. Not to put too fine a point on it, but the appellant's assertion that it cannot locate anywhere is a disputed question of material fact. Taboo is the first and only licensed adult business in the city of 129,000, and the City's action here is a practical ban of plaintiff's lawful adult message at any location due to the numerous internal requirements of the ordinance.[6] See *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102 (9th Cir.

---

[6] The district court rejected appellant's request to draw an inference from the numerous internal requirements of the ordinance that work to effect a complete ban on an adult business at any location. The ordinance requires, for example, individual employee licensing, the segregation of inventory, limits hours of operation, *etc*. The City contends the ordinance purports to ban an adult business owner from participation in the State's Board of Zoning Appeals, a quasi-judicial body. See § 6-29-800, S. C. Code. The district court said these issues were not

1988) ("Moreover, the court found that 'since Walnut has the only theater in the City exhibiting adult films, its elimination would leave the City without any theater showing such films, and the ordinance's effect would then be a total exclusion of adult theaters in the City.'"); *New Albany DVD, LLC v. City of New Albany*, 581 F.3d 556 (7th Cir. 2009) ("[A] municipality [cannot] get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance."); *World Wide Video v. Tukwila*, 117 Wn.2d 382, 816 P.2d 18 (1991) ("In contrast, Tukwila has not shown that adult businesses with predominately 'take-home' merchandise (which clearly are covered by the ordinance) have the same harmful secondary effects traditionally associated with adult movie theaters and peep shows; thus the 'substantial governmental interest' portion of the test has not be met.") The district court never addressed the reach of the City's ordinance that forbids any business that has both one print item and one device in a single building. In *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288 (5th Cir. 2003), the Court of Appeals held that in order for such an ordinance to be constitutional, "we must require at least some substantial evidence of the secondary effects of establishments that sell adult products solely for off-site consumption. See *Alameda Books*, 535 U.S. at 438, 122 S.Ct. 1728 ("The

---

before it. The district court in Illinois called such an examination of the ordinance a "scalpel" analysis. *Metro Pony v. City of Metropolis*, 11-cv-144-JPG (S.D. Illinois 2012)

municipality's evidence must fairly support the municipality's rationale for its ordinance.")  Otherwise, even ordinary bookstores and video stores with adult sections could be subject to regulation that restricts their First Amendment rights without evidence that they cause 'secondary effects.'"  (J.A. 3995-4009), *Gene Lovelace Enterprises LLC v. City of Knoxville,* E2013-01584-COA-R3-CV (Court of Appeals, 2014), which case evaluates another Bergthold ordinance.  It contains a neat summary of the controlling federal law on many of the issues raised by this case.  The Tennessee Supreme Court declined to review *Lovelace*, and it is now back before the circuit court to take up the unresolved issues, including the plaintiff's application to depose Bergthold as the author of the Knoxville ordinance.  Here, when appellant expressed a desire to depose Bergthold as the author of the ordinance, the defendant threatened sanctions.  (This is discussed below.)

Third, the district court refused to consider all the evidence put forward by appellant as the party resisting a motion for summary judgment.  The district court did not just ignore McLaughlin; it rejected every *scienter* of appellant's evidence. In short, the district court weighed the evidence and found the City's evidence more compelling, thus depriving the appellant of his right to trial by jury.

**B.    THE DISTRICT COURT REJECTED  ALL OF APPELLANT'S EVIDENCE CONCERNING ALTERNATE SITES**

The motivated reasoning in the district court, represents the overarching error of law that permeates the entire Order.  It comes into its sharpest focus on the pages 21-43 of the Order (J.A. 4030-4052).  In these 22 pages, the district court analyzes the appellant's evidence regarding the existence of alternative avenues of expression.  The City claims that out of the 86,336 acres that make up the City of Columbia, there are 142.82 acres, or 0.0016%, of the total land available, comprising 46 lots, that are allegedly available to accommodate the dissemination of an adult message.  The appellant and his expert methodically analyzed each allegedly available site and demonstrated that the City's list of 46 alleged alternative sites is, at best, exaggerated.  Thus the question of whether the City does or does not provide reasonable alternative avenues becomes a disputed question of material fact.  Instead of evaluating appellant's evidence in the light most favorable to it, the district court evaluated the City's list and accepted the City's factual position.  Likewise, the district court spent over 50% of the Order under review (22 pages from 21-42) attacking McLaughlin's testimony and parsing it in order to conclude that the appellant has not presented any genuine issue of material fact.  The page limitation on briefs prevents appellant from demonstrating the error related to each parcel below, but a salient example from the Order under

review will serve to illustrate the length the district court was willing to go to disbelieve appellant and his expert.

One of the alleged 46 available sites the City identified is the site of South Carolina's largest public utility, South Carolina Electric & Gas, at 3000 Harden Street. Appellant's expert pointed out that the site is not available for an adult business site for reasons that are both obvious and irrefutable. However, the district court rejected this testimony. The district court held:

> There is no genuine dispute as to any material fact regarding 3000 Harden Street. The City does not dispute that it is owned by SCE&G and is a major facility, and Taboo does not dispute that it is privately-owned and could be purchased for the right price.

Order at page 34, (J.A. 4043).

This error in the district court's holding is obvious. Whether or not the City's inclusion of the S.C.E.&G. site is reasonable is a disputed question of fact, and a juror could find the City's inclusion is pure pretext. The City says the S.C.E.&G. site should count as a viable alternative site; the appellant says including this site is ridiculous and unbelievable. Yet the district court decides contested facts, substituting its view of the evidence for that of a jury and deciding favorably for the City that 46 sites are available. (An interesting side note to this discussion that dovetails with the City's refusal to engage in meaningful discovery is that the City refused to identify the allegedly available sites **until after the**

37

**appellant filed suit**.  See appellant's testimony before the district court at J.A. page 198.  As this Court recently held:

In considering a motion for summary judgment, the district court must "view the evidence 'in the light most favorable to the'" nonmoving party. *Tolan*, 134 S. Ct. at 1866 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) ). "summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *10A Charles Alan Wright & Arthur R. Miller et. al., Federal Practice & Procedure* § 2728 (3d ed. 1998). The court therefore cannot weigh the evidence or make credibility determinations. *Mercantile Peninsula Bank v. French (In re French)*, 499 F.3d 345, 352 (4th Cir. 2007) (citing *Anderson*, 477 U.S. at 255); see also *Fed R. Civ. P.* 56 Advisory Committee's Note (1963) ("where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.") The Supreme Court recently granted certiorari and issued a decision in a seemingly routine summary judgment case because the lower court had "fail[ed] to credit evidence that contradicted some of its key factual conclusions" and "improperly 'weighed the evidence' and resolved disputed issues in favor of the moving party." *Tolan*, 134 S.Ct. at 1866 (brackets omitted) (quoting *Anderson*, 477 U.S. at 249). Specifically, the court of appeals (affirming the district court) repeatedly failed to credit the testimony of the plaintiff and members of his immediate family, which often contradicted the court's statement of the "central facts" of the case. *Id*. at 1866-67. Because the court of appeals "weigh[ed] the evidence and reach[ed] factual inferences contrary to [the non-movant's] competent evidence," the Supreme Court vacated the court's affirmance of the district court's grant of summary judgment. *Id*. at 1868.

*Jacobs v. N. C. Administrative Office of the Courts*, ____ F.3d ____ (4th Cir., Opinion 13-2212, filed March 12, 2015)

The appellant and his expert testified they visited every one of the alleged 46 sites (appellant even photographed himself in front of each), and none are available.  The question of whether there are sufficient available sites available is a fact that must be determined on a case by case basis.  *Walnut Properties Inc. v. City of Whittier*, 861 F.2d 1102 (9th Cir. 1988)  "In post-*Renton* litigation, the

38

courts considering this question "have generally found the number [of sites] to be inadequate if . . . under 1% of the city acreage is potentially available.'" *University Books, I*, 33 F.Supp. at 1371, quoting *Dia v. City of Toledo*, 937 F. Supp. 673, 678 (N.D. Ohio 1996)  *University Books & Videos, Inc. v. Miami-Dade County* 00-3012-CIV (S.D. Florida 2001).  The district court rejected appellant's and his expert's testimony even though the expert is a land planner, the exact credentials the Supreme Court held should be given weight.  Simultaneously, the district court accepted every opinion put forth by the City's Director of Planning and Development Services, Krista Hampton, as being true even though McLaughlin's three affidavits, in particular the third, challenged each of her conclusions.  The district court weighed the competing testimony and affidavits and determined it believed Krista Hampton, the City's Planning Director, and did not believe either appellant or expert Bruce McLaughlin, a certified land planner (Master of Science (Planning) University of Toronto, member American Institute of Certified Planners.  This is an error of law that requires reversal.

## C.    THE DISTRICT COURT ERRED IN FINDING THE BERGTHOLD ORDIANCES ARE NARROWLY TAILORED.

The district court gave no consideration to a so-called scalpel analysis suggested by the district court in the Southern District of Illinois in *Metro Pony v. City of Metropolis*, 11-cv-144-JPG (S.D. Illinois 2012).  The district court gave no attention to the myriad of requirements in the ordinance so burdening an adult

business that it is impossible to operate at any location. None of the internal regulations in the ordinance are related to combatting negative secondary effects, but the district court was not interested in examining them or how they were related to combatting alleged negative secondary effects. The only analysis applied to the scalpel analysis was on pages 18-21 of the Order under review (J.A. 4027-4030) and consists entirely of saying that other courts have approved them. For purposes of summary judgment, the appellant has created a genuine issue of material fact that the internal regulations are not related to combatting alleged negative secondary effects.

### D. THE DISTRICT COURT DID NOT FOLLOW THE REQUIREMENTS OF REASONABLENESS SET FORTH BY THE UNITED STATES SUPREME COURT IN *RENTON* AND *ALAMEDA*

The district court erred by not following the *Renton* and *Alameda* requirements of "reasonableness." Reasonableness sets the limits on municipalities' regulating speech. The dispute, distilled down to its essence, is that the City contends reliance on the Bergthold ordinance's expertise meets the Supreme Court's test for reasonableness. The appellant says, "not so fast," because the appellant and his expert discredit the both the legislative history, the City's reliance on "shoddy data," and the City's expressed rationale. The appellant asserts in addition that 0.0016% of available acreage is constitutionally invalid and that the City's alleged 46 alternative sites are pretext. The appellant's assertions

about the City's reliance on Bergthold's cases and studies follows the *Renton* and *Alameda* standards by casting doubt on the City's rationale, so the "burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance." *Alameda*. The City did not do this, and the district court ignored this defect and failed to apply the reasonableness standard.

In addition to appellant's testimony (J. A. pages 166-224), Mr. McLaughlin's three affidavits speak for themselves (J.A. 975-995, 1048-1067, 1155-1156 and 3945-3951). Mr. McLaughlin testified in detail that even if each of the 46 sites the City identifies as being available, were, in fact, available, each one of them is still subject to numerous layers of discretionary permitting. (J. A. 3945-3950). "In other words, any person affected by the City's adult use zoning regulations must depend on the individuals responsible for enforcing the Ordinance to do so in a manner that cures it of the absence of a definition of, such as, for example, "a lot devoted to residential use."

This Court held that the right to use property that depends upon a subjective decision will not withstand scrutiny. In *Chesapeake B & M, Inc. v. Harford County, Maryland*, 58 F.3d 1005 (4th Cir. 1995), the entire Court took up a challenge to an adult licensing ordinance and reversed the district court's refusal to strike down the ordinance. After this Court declared the ordinance

41

unconstitutional for failure to provide for prompt judicial review, it held: "Moreover, we hold that, because the licensing scheme lacks essential procedural safeguards, it is an unconstitutional prior restraint on protected speech. As such, it is unenforceable, and we vacate the district court's order insofar as it holds otherwise." *Chesapeake* at page 1014. Likewise, in *11126 Baltimore Blvd. v. Prince George's County*, 58 F.3d 988 (4th Cir. 1995), another case taken up by the entire Court, this Court held the Prince George County's requirement that a bookstore meet 13 criteria for a special exception also vested too much discretion in government officials and struck it down as well.

It is well settled "that in the area of free expression a licensing statute places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 109 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988). Permitting government official's unbridled discretion in determining whether to allow protected speech presents an unacceptable risk of both indefinitely suppressing and chilling protected speech. See *FW/PBS*, 493 U,.S. at 227, 1210 S.Ct. at 605; *Freedman v. Maryland*, 380 U.S. 51, 59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965)

*11126 Baltimore Blvd. v. Prince George's County* at page 991[7]

---

[7] The district court jettisoned the issue of prior restraint on the grounds that the ordinance provides for a provisional license and that these claims were not before the federal court. However, the City refuses to grant a provisional license as set forth in its ordinance and resisted appellant's request for a preliminary injunction. Despite the provisional license provision, the City has now issued seven criminal actions pending against Taboo. The City also contends an adult business owner is prohibited from applying before the Board of Zoning Appeals, a *quasi*-judicial body created by the State. The district court refused to take up these issues.

2.    **THE CITY OF COLUMBIA AMENDED ITS ORDINANCE ON MAY 19, 2015 (J.A. 4099-4100) IN AN ATTEMPT TO MAKE IT MORE REASONABLE AND THE DISTRICT COURT REFUSED TO SET ASIDE ITS JUDGMENT OR TO ALLOW THE PLAINTIFF TO INQUIRE ABOUT THE AMENDMENT**

Here, after the appellant challenged the fact that the ordinance under review subjects an adult business license to multiple layers of discretion, the City of Columbia lost confidence in its ordinance and on May 19, 2015, it amended it, after the district court granted summary judgment.  See the City's "Letter Notice" (J.A. 4099-4100).  There is nothing in the record to explain why the City reversed course.  Appellant asked the lower court to vacate its judgement in light of the amendment and asked for permission to inquire about the new ordinance, (J.A. 4103-4122 and 4142-4153)  as follows:  "to vacate its judgment filed (ECF 82) and schedule a hearing to consider:  (1) whether the case should be vacated following the City's judicial admission filed June 2, 105, (J.A. 4099-4102), that the ordinances are not narrowly tailored; (2) whether the entire case is now premature or whether plaintiff should be afforded leave of Court to conduct discovery on the City's newly enacted ordinance. . ."  The district court denied both applications on the ground that the appellant lacked standing to challenge the amended ordinance and the issue was moot. (J.A.4164-4174) "As an initial matter, Taboo does not have standing to challenge the former subsection. . . .  Furthermore, even if Taboo

did have standing, the matter is moot as the ordinance has now been arguably narrowed to the benefit of Taboo and any other adult business seeking to be licensed in the City." Order at page 9-10, (J.A. 4172-4173). This is an error of law because federal jurisprudence allows any party who may be "arguably within the zone of interests" affected by the ordinance to challenge it, and since the City has now issued seven criminal citations against the appellant or its employees, there is no denying Taboo is in the "zone of protected interests." See Wright & Miller, *13A Federal Practice and Procedure* § 3531.7 "Zone of Protected Interests."

The new ordinance is based on the original legislative history Bergthold presented to Council in December, 2011, despite the fact that the City had before it in May 2015, not only McLaughlin's fresh study of Columbia, but also its own 2013 Devine Street study. Nonetheless, the district court rejected appellant's request to inquire about this reliance. This Court can draw the inference that the City found its ordinance incorrect as enacted and lacked confidence in it on appeal, failing all the tests set forth by the Supreme Court in *Renton* and *Alameda,* this Court in *Chesapeake* and *11126 Baltimore* and many other cases. The City now threatens the appellant with criminal fines and incarceration under an ordinance that appellant challenges and which the district court found not to be a prior

restraint because of the built-in provisional license provisions. (Order at page 44, J.A. 4053)[8]

The district court's decision is not controlled by case law or logic. It is a contradiction because the district court did not enter summary judgment for the City on either standing or mootness grounds. Standing does not evaporate in the middle of a case, and the district court erred in precluding appellant from renewing its objection in the face of the City's admission that its ordinance is constitutionally flawed, especially where it ignored evidence directly relevant to Taboo. It is beyond dispute that Taboo has standing to challenge the City's ordinance either on its face or on as applied to Taboo. It is illogical to conclude that Taboo has standing to challenge the original ordinance, which is not in dispute, but lacks standing to challenge the amended ordinance. Both are aimed at suppressing Taboo's message on challenged grounds. The district court is correct that the ordinance, as amended, is narrower, but the district court's order is still controlled by an error of law as the discretion remaining in the ordinance remains unbridled as the examples in McLaughlin's Third Declaration (J.A. 3845-3950) and the City's invocation of criminal process both demonstrate.

---

[8] In the City's February 5th filing to this Court, it denies it is threatening to arrest anyone (Doc 14, page 4), yet appellant is currently scheduled for an April 25th court date to face 7 criminal citations issued on March 24, 28, and April 20, each of which carries a penalty for fines of $1,092.00 and imprisonment of up to 30 days per ticket.

45

As for the issue becoming moot, it is uncontested that Taboo is the first and only adult business in the history of the City of Columbia, and the ordinances under review put appellant out of business. The elimination of Taboo leaves the largest city in South Carolina devoid of any licensed adult business. Even if the City had not relied on shoddy data, the myriad of restrictions in the ordinance are designed to effect a total ban of any adult businesses in the largest city in South Carolina. See the Illinois District Court's "scalpel" analysis in *Metro Pony*. Since the City's "Letter Notice" is a judicial admission that Taboo has been unlawfully burdened by the Ordinance, at least in its un-amended form, the case cannot be moot as a matter of law.

3.    **THE DISTRICT COURT REFUSED TO ALLOW THE APPELLANT TO ENGAGE IN MEANINGFUL DISCOVERY AND IGNORED THE APPELLANT'S REQUESTS FOR SCHEDULING CONFERENCE TO ADDRESS THE INCOMPLETE DISCOVERY.**

Here, the district court's error is demonstrated by pointing to its contradictory findings. The district court ignored the discovery issue by concluding that Taboo did not bring the discovery issues to the court's attention, but the record shows this appellant requested assistance on three occasions. The district court ignored appellant's first request for assistance on August 28, 2014, (J.A. 3093-3094) and then again in November, 2014. After the district court did not act on appellant's August request, appellant filed a Motion to Compel on November 3, 2014. (J.A. 3881-3886). When that failed, appellant reminded the

46

district court that the appellant had not been afforded access to important city information on December 1, 2014. (J.A. 3964-3976).

The district court sweeps aside the appellant's requests for help by concluding that:

- The appellant could obtain the discovery it wanted through the *South Carolina Freedom of Information Act*.[9]

- The appellant had plenty of time to do discovery even though the parties held up discovery for months following the City's request to stay discovery on March 24, 2014. (J.A. 952-953)

- Discovery would not have mattered because animus and motivation are irrelevant.

The district court ignored the prejudice suffered by the appellant following the City's application to stay all discovery filed March 24, 2016, (J.A. 952-953). For months the City refused to participate in any discovery, and when the City finally produced, it only produced witnesses who know nothing about the ordinance. When appellant sought to question someone who could answer questions about the ordinance, the City responded by threatening appellant and his lawyer with

---

[9] As demonstrated in the next section, the district court refused to hear appellant's cause of action under the *South Carolina Freedom of Information Act*. Moreover, the only remedy for a violation of *F.O.I.A.* is a legal action in state court, which could take years to resolve.

sanctions. (J.A. 3093-3094.) Those threats led to the appellant's request to the district court for help in ([ECF 55] J.A. 3093-3094) the district court ignored the request. The witnesses that the City did produce knew nothing. See the quotation from the deposition of Roger Meyers quoted at pages 3-4 of appellant's brief (J.A. pages 3889-3890). Not one witness produced by the City could explain anything about the myriad of requirements that are unrelated to controlling alleged negative secondary effects. See *Lovelace v. City of Knoxville*, (J.A. 3995-4009).

Finally, the district court concludes that the appellant failed to demonstrate a need for this evidence under Rule 56(f). In other words, the appellant failed to use the correct form. This Court held in *McCray v. Maryland Dept. of Transportation*, 741 F.3d 480 (4th Cir. 2014):

> Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask.
> 
> . . .
> 
> As we have emphasized, 56(d) motions for more time to conduct discovery are proper in cases such as this one, where the main issue is one of motive and where most of the key evidence lies in the control of the moving party. See *Harrods*, 302 F.3d at 246-47 (citing *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 565-66 (7th Cir. 1972)).
> 
> . . .
> 
> Non movants must generally file an affidavit or declaration before they can succeed on a 56(d) motion, or if not, non-movants must put the district court on notice as to which specific facts are yet to be discovered. *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)

48

This record demonstrates that the appellant put the district court on notice in three separate filings that the City was thwarting the appellant's efforts to make a complete record, and the district court did not take up the question until after it had granted summary judgment. This is a reversible error of law under the holding of *McCray* because no one can deny that the appellant's three applications to the district court "put the district court on notice as to which specific facts are yet to be discovered." Finally, the record in this case overflows with evidence that the City of Columbia purchased Mr. Bergthold's ordinance for one reason: to censor Taboo. Any reasonable juror might look at this record and conclude that all of the City's alleged goals—spoon-fed to them by the ordinance's author, Mr. Bergthold, are shown false by considering the Council's lack of concern about details of Bergthold's ordinance, other than the revealing statements about Taboo by Councilmembers Plaugh, Runyan, Baddourah and Mayor Benjamin, and others. (J.A. 3905): "Councilor [*sic*.] Baddourah inquired about Taboo, asking how long can they stay in business." The district court would not permit examination of Councilmembers or any other witness who could shed light on the City's concerns.

## THE DISTRICT COURT ERRED IN REFUSING TO ALLOW THE APPELLANT TO AMEND ITS COMPLAINT

On August 22, 2014, appellant filed a motion to amend the complaint to add a cause of action under the *South Carolina Freedom of Information Act*. (J.A.

49

2744-2747). This was 244 days after appellant filed suit and 151 days after the City filed its request to stop all discovery. Following the City's threats of sanctions appellant sought to overcome the impasse by resorting to the *South Carolina Freedom of Information Act*. On September 11, 2014, the district court denied appellant's request to amend the complaint. (J.A. 3101-3102) After the district court refused to allow the amendment, appellant filed a state action for violations under the *Act* in a separate state court action, and through that action obtained some important information. The district court simultaneously refused to assist the appellant in completing discovery, and the City blocked appellant's efforts to develop information about how the City's ordinance came into existence. The appellant's amended complaint made these issues relevant to the appellant's ordinance challenge. As this record demonstrates, the creation of the licensing ordinance is unlawful at worst, suspicious at best. The licensing ordinance has no "requestor," a mandatory pre-requisite for an ordinance. (See City Ordinance §2-83 which is in (J.A. 3925-3929 and 24-41) Bergthold's sudden appearance without public notice or Council voting to engage for his services, the ordinances passing in two "special" meetings in quick succession, and the lack of a named requestor are all salient facts casting doubt on the City's motivation and rationale. However, the City succeeded in blocking appellant from getting any meaningful information about any of these important facts.

50

The legal error in the district court's September 11, 2014, Order is that it never explains why the court rejected the appellant's request to amend. The request came early in the case—especially in light of the City's March request to stop discovery. The Order under review admits that the court has supplemental jurisdiction, but "declines to exercise such jurisdiction" (J.A. 3101-3102) without explanation. This decision leaves the parties groping in the dark as to the reason and is in conflict with the rule: "Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." [citation omitted] *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295 (4th Cir. 2008)

Here, justice required the district court allow the amendment because it served judicial economy, and it solved the impasse over discovery. Instead, the district court refused the amendment for no stated reason, and the refusal to use discretion is just as much an error of law as an abuse of discretion.

## CONCLUSION

In conclusion, the district court's order is controlled by errors of law. The district court did not apply the proper summary judgment standard in evaluating appellant's evidence. The district court jettisoned the Supreme Court's requirements that ordinances restricting speech be reasonable. It forced appellant

to combat the City with an incomplete record and did not provide an opportunity for the appellant to air its complaints about incomplete discovery. The district court improperly denied appellant the right to amend its complaint, and the district court's refusal further hampered appellant's discovery efforts. When the City amended its ordinance in May, 2015, based on the same "legislative history" presented in December, 2011, the district court should have allowed the appellant an opportunity to inquire and make a record because the City had before it in May, 2015, both McLaughlin's study of Columbia and its own 2013 Devine Street Study. Finally, the district court ignored the fact that the City identified 0.0016% of its available acreage as allegedly available to support an adult business. In short, there is nothing in this record that demonstrates the City narrowly tailored its ordinance to meet the specific needs of Columbia: "Each governmental body must look at its own situation and do the legal work necessary to insure that their laws comport with precedent from this Court as well as the United States Supreme Court." *Harkins v. Greenville County*, 340 S.C. 606, 533 S.E.2d 886 (2000)

The appellant respectfully requests an Order of this Court remanding this case with instructions to reconsider the plaintiff's motion of summary judgment, and if denied, to set a scheduling Order to allow the appellant an opportunity to complete discovery and set the matter for trial by jury.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests this case be scheduled for oral argument.


Respectfully submitted,


April 25, 2016                    /s/ Thomas R. Goldstein_____
                                  Belk, Cobb, Infinger & Goldstein, P.A.
                                  Thomas R. Goldstein, Fed. I.D. 2132
                                  P. O. Box 71121
                                  Charleston, S. C.  29415-1121
                                  (843) 554-4291
                                  (843) 554-5566 (fax)
                                  tgoldstein@cobblaw.net

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the Type-volume limitation of Fed. R. App.
32(a)(7)(B) because:

The page count of this brief is  13,974 words.

2. This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6)
because:

This brief has been prepared in a proportionally spaced typeface
using Microsoft Word, Times New Roman,  14 point.

April 25, 2016

/s/ Thomas R. Goldstein
Thomas R. Goldstein
*Counsel for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that on the 25th day of April 2016, I caused the required copies of the foregoing Opening Brief of the Appellant and Joint Appendix to be filed with the Clerk of Court, via hand-delivery, and caused the electronic filing of the Opening Brief of Appellant and Joint Appendix using the Court's CM/ECF system, which will send notification of such filing to the following counsel:

Scott D. Bergthold
Law Office of
Scott D. Bergthold, PLLC
2290 Ogletree Avenue, Suite 106
Chattanooga, TN 37421-8828
sbergthold@sdblawfirm.com

Peter M. Balthazor
Riley, Pope & Laney, LLC
2838 Devine Street
Columbia, SC 29205
peteb@rplfirm.com

*Counsel for Appellee*

*/s/ Thomas R. Goldstein*
Thomas R. Goldstein
*Counsel for Appellant*